MARY'S OPINION HEADING 









                                                NO.
12-06-00071-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER,
TEXAS

EDGARDO SANTIBANEZ
SANCHEZ,    §                      APPEAL FROM THE SEVENTH

APPELLANT

 

V.        §                      JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            Appellant Edgardo Santibanez Sanchez was charged by
indictment with capital murder. 
Appellant pleaded guilty to the lesser offense of murder, and the trial
court assessed Appellant’s punishment at imprisonment for life.  In two issues, Appellant contends that his
plea of guilty was not made knowingly and voluntarily, and that he did not
receive effective assistance of counsel. 
We affirm.

 

Background








            The victim, Alberto Flores, was shot five times, causing
his death.  The evidence indicated that
the killer had first shot the victim once in the leg with a .380 Super Colt
semi-automatic pistol.  When the pistol
jammed, the assailant shot the victim five more times with an SKS
semi-automatic assault rifle.  A witness
saw Appellant’s car leave the scene of the crime immediately after the
shooting.  The .380 Super Colt pistol
used in the murder was found a few feet from the victim’s body.  The pistol was inscribed with Appellant’s
first and last names and bore the additional inscription “El Bastardo.”  A police search of Appellant’s residence
discovered the SKS assault rifle used in the shooting, a Sten machine gun and
silencer, $32,000 in small bills, and $6,000 in counterfeit currency.  Appellant was arrested for capital murder
December 7, 2004, and the trial court 
appointed counsel to represent him on the same date.

            During the time Appellant remained confined awaiting
trial, he was examined for competency, the trial court held ten hearings on
various pretrial matters, and the State gave formal notice of its intent not to
seek the death penalty.  On October 20,
2005, Appellant pleaded guilty to the lesser included offense of murder.  Before sentencing, Appellant sent the trial
court a letter maintaining he had not killed Flores and complaining that his
attorneys had forced him to plead guilty. 
The letter provoked a hearing on January 10, 2006, during which
Appellant withdrew the allegations made in his letter, and, after further
admonishment, reiterated his guilty plea. 
On February 16, 2006, the trial court sentenced Appellant to
imprisonment for life.

 

Involuntary Plea

            In his first issue, Appellant contends that he is
entitled to a new trial because his plea of guilty was not made “knowingly,
intelligently, and voluntarily.” 
Appellant maintains that because of his mental and physical disabilities
and his inability to effectively communicate with his lawyers, he did not
understand the offense to which he pleaded guilty, the elements of the offense,
or the consequences of his plea.

Applicable Law

            To be constitutionally valid, a guilty plea must be
knowing and voluntary.  Brady v.
United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d
747 (1970); Stephens v. State, 15 S.W.3d 278, 279 (Tex. App.–Houston
[14th Dist.] 2000, pet ref’d), cert. denied, 531 U.S. 1169, 121 S. Ct.
1134, 148 L. Ed. 2d 999 (2001).  Before
accepting a plea of guilty or nolo contendere, the court must admonish a
defendant of the range of punishment for the offense.  Tex.
Code Crim. Proc. Ann. art. 26.13(a)(1) (Vernon Supp. 2006).  A showing of substantial compliance with
Article 26.13 establishes that a defendant’s plea was prima facie knowing and
voluntary.  Eatmon v. State,
768 S.W.2d 310, 312 (Tex. Crim. App. 1989). 
The burden then shifts to the defendant to show both that he was unaware
of the consequences of the plea, and was misled or harmed by the trial court’s
admonishment.  Tex. Code Crim. Proc. Ann. art 26.13(c) (Vernon Supp. 2006); Robinson
v. State, 739 S.W.2d 795, 801 (Tex. Crim. App. 1987).  A trial court is considered to have
substantially complied with Article 26.13 when it admonishes the defendant of
the appropriate range of punishment, the sentence given is within the range
prescribed by law, and the defendant fails to affirmatively show harm.  Hughes v. State, 833 S.W.2d
137, 139-40 (Tex. Crim. App. 1992).  The
question of whether the defendant’s plea was voluntary is determined by the
totality of the circumstances.  Finberg
v. State, 922 S.W.2d 205, 207 (Tex. App.–Houston [1st Dist.] 1996, pet.
ref’d).  A plea of guilty is not rendered
involuntary merely because the defendant received a greater punishment than
anticipated or because he did not assess every relevant factor when making his
decision to plead guilty.  Lemmons
v. State, 133 S.W.3d 751, 757 (Tex. App.–Fort Worth 2004, pet. ref’d).

Analysis

            At the October 20 hearing, the trial court properly
admonished Appellant of the range of punishment for the offense as required by
Article 26.13.  The trial court
thoroughly explained Appellant’s constitutional rights.  Appellant repeatedly testified that he
understood those rights, but wanted to waive them and plead guilty.  Appellant further testified that he was
satisfied with the representation afforded him by his two court appointed
attorneys.  The record also contains
Appellant’s written acknowledgment that he understood the range of punishment
for this offense, as well as his agreement to stipulate the evidence against
him and waive jury trial.

            On December 26, 2005, Appellant sent the trial court a
letter in Spanish denying that he had killed Flores but expressing regret that
he had gone that morning to where Flores was killed.  He also intimated that he had felt forced to
plead guilty, and that his attorneys would not come to see him.  The letter also maintained that this was the
first time he had been involved in a criminal matter.  He expressed remorse, and asked for a light
sentence.

            The trial court conducted a hearing in specific response
to Appellant’s letter.  At that hearing,
Appellant testified, as follows:

 

Q.            Edgardo
- - Mr. Sanchez, let me ask you this: In the letter, you’re stating that you’re
innocent of murder.  What do you mean by
that?

 

A.            I
just wanted to see - - I wanted to - - I plead guilty.

 

Q.            But
you understand that you pled guilty to murder, but you have to be guilty of it.

 

A.            Yes,
accomplice.

 

Q.            You
understand that?

 

A.            Yes.

 

Q.            That’s
why you pled guilty, because you’re guilty as an accomplice; is that correct?

 

A.            Yes.  I had the gun.  I think so, because I had the gun.  I was an accomplice.

 

                . . . .

 

Q.            Now,
also in the letter, you told the Judge that-- words to the effect that you
weren’t - - that the lawyers forced you to plead guilty?

 

A.            No.  No.  I
don’t know how to express myself.  That’s
it.  I was just asking for forgiveness so
I could get less time.  From my heart, I
was saying these things.

 

Q.            Well,
in the letter, it does say that the lawyers, in some manner, forced you to
plead guilty.  Is that true or false?

 

A.            What
do you mean?

 

Q.            You
weren’t forced to plead guilty, were you?

 

A.            Oh,
no, no.

 

 

            Appellant pleaded guilty to the offense only after full
and extensive admonishments by the trial court. 
After the trial court’s substantial compliance with Article 26.13(a)(1),
Appellant was required to “affirmatively show that he was not aware of the
consequences of his plea and that he was misled or harmed by the admonishment
of the court.”  Tex. Code Crim. Proc. Ann. art. 26.13(c).  Appellant has offered only unsupported
subjective assertions that he did not know the nature of the offense to which
he pleaded guilty, the elements of the offense, or the consequences of his plea.  An affirmative showing requires more.  See Lemmon, 133 S.W.3d at
759.  In his testimony during the hearing
regarding the letter, Appellant offered no evidence affirmatively showing that
he did not understand the court’s admonishments or the advice of his attorneys
regarding the nature and consequences of his plea.  Nor has he demonstrated that he was harmed or
misled by the court’s admonishment or the advice of his counsel.  A presumption of regularity attaches to the
proceeding and the resulting judgment, and the burden is on Appellant to
overcome this presumption.  Cochrane
v. State, 66 S.W.3d 415, 417 (Tex. App.–Tyler 2001, no pet.).  Appellant’s first issue is without merit and
is overruled.








Ineffective Assistance of Counsel

            In his second issue, Appellant complains that his trial
attorneys were ineffective.

Standard of Review

            The standard for testing claims of ineffective assistance
of counsel is set out in Strickland v. Washington, 466 U.S. 668,
104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted for Texas constitutional
claims in Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App.
1986).  To prevail on his claim of
ineffective assistance, an appellant must show that his attorney’s
representation fell below the standard of prevailing professional norms, and
that there is a reasonable probability that, but for the attorney’s deficiency,
the result of the trial would have been different.  Tong v. State, 25 S.W.3d 707,
712 (Tex. Crim. App. 2000).

Analysis

            Our review of counsel’s representation is highly
deferential; we indulge a strong presumption that counsel’s conduct falls
within a wide range of reasonable representation.  Strickland, 466 U.S. at 689,
104 S. Ct. at 2065; Tong, 25 S.W.3d at 712.  This court will not second guess through
hindsight the strategy of counsel at trial, nor will the fact that another
attorney might have pursued a different course support a finding of
ineffectiveness.  Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

            First, Appellant contends that his trial counsel were
ineffective in failing to secure an independent mental evaluation of his sanity
and fitness to stand trial.  Trial
counsel initially requested a competency examination of Appellant, which the
trial court granted.  Appellant’s counsel
explained that the motion for an examination was based upon Appellant’s
diabetes and the presence of parasites in his brain.  Appellant’s attorneys withdrew their request
for a competency evaluation after receiving a copy of the report of Dr. Tynus
McNeel, the mental health expert appointed by the court to examine
Appellant.  Counsel also withdrew notice
of intent to raise an insanity defense. 
Dr. McNeel’s report is not part of the record on appeal, but it is safe
to assume that Dr. McNeel found Appellant competent to stand trial and not
insane at the time of the offense.

            The record does show that Appellant had never been
confined in a mental institution and had never been under the care of a
psychiatrist or under long term psychiatric care.  Appellant had been treated for the brain
parasites, and he was taking seizure medication at the time of his trial, but “for
a medical condition.”  His counsel
testified that they were able to communicate “very effectively” with him and no
longer questioned his competency.

            Trial counsel is not obligated to present frivolous
motions or objections.  Wood v.
State, 4 S.W.3d 85, 91 (Tex. App.–Fort Worth 1999, pet. ref’d).  Appellant has failed to show that a question
existed about Appellant’s sanity at the time of the offense or his competency
to stand trial.  Under these
circumstances, trial counsel’s decision to withdraw his request for another
psychiatric examination was not ineffective representation.

            Appellant next maintains that his trial attorneys were
ineffective in failing to meet with him during the eight months he was in jail
awaiting trial, a complaint made in Appellant’s plaintive letter to the trial
judge, but belied by the record.  Before
Appellant pleaded guilty, the trial court held ten pretrial hearings during
which Appellant’s attorneys demonstrated they were well prepared.  Appellant repeatedly expressed his
satisfaction with his attorneys, the last time in the hearing provoked by his
letter to the trial court.

            Appellant presents nothing more than an allegation
contradicted by the record that his attorneys failed to meet with him.  Moreover, he has failed to allege or show
what would have been accomplished in other meetings or what effect they would
have had on the outcome of his case.

            Finally, Appellant contends his trial counsel were
ineffective because they did not withdraw his guilty plea or advise Appellant
that he could withdraw his guilty plea. 
The record does not directly reflect what tactical considerations
prompted Appellant’s plea of guilty in the first instance.  But the record does show that the State
possessed ample evidence to prove capital murder as charged in the
indictment.  Given the facts of the case,
acquittal was, at best, a remote possibility. 
If convicted, Appellant faced a mandatory sentence of life
imprisonment.  Pleading to the lesser
offense of murder made the entire first degree felony range of punishment
available as a sentencing option.  Although
the trial court imposed the maximum sentence available, Appellant still has the
possibility of parole.  The decision to
persist in his plea of guilty appears to have been based upon a reasonable
trial strategy.  Nothing in the record
indicates otherwise.  Counsel were not
ineffective for failing to withdraw Appellant’s plea of guilty.

            Appellant’s claims that his attorneys’ performance was
ineffective in the three instances alleged are without merit.  Appellant’s second issue is overruled.

Disposition

            The judgment of the trial court is affirmed.

 

 

 

                                                                                                    BILL BASS 
  

                                                                                                            Justice

 

 

Opinion
delivered June 29, 2007.

Panel
consisted of Griffith, J., Hoyle, J., and Bass, Retired Justice, Twelfth Court
of Appeals, Tyler, sitting by assignment.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)